take it under advisement. Mr. Schlafly and Mr. Beerig, can you please come to the podium? Can you hear me? Yes, Your Honor. I can, Your Honor. Good morning. Good morning to each of you. The Court calls Appeal No. 20-3072, Association of American Physicians and Surgeons v. American Board of Medical Specialties. We'll begin with argument from the appellant, Mr. Schlafly. Thank you, Your Honor. I'm Andrew Schlafly. I represent Appellant Association of American Physicians and Surgeons. Briefly, we were founded in 1943 and we're an association of practicing physicians. And the reason we brought this suit and the reason we've pursued this appeal is because defendant, the American Board of Medical Specialties, as a private organization, is interfering with the ability of physicians to practice medicine, be seen, see their patients in hospitals, be on insurance plans. And what the American Board of Medical Specialties is doing, I'll abbreviate them as ABMS, is they've instituted a maintenance of certification program, which I want to explain very briefly. It's in the papers. But maintenance of certification is an ongoing requirement of physicians that they continue to maintain their board certification after they originally got it. And it's an annual or nearly annual requirement that physicians spend an enormous amount of time. In our complaint, we say sometimes more than 100 hours a year, plus expense, plus taking high stake multiple choice examinations, simply to maintain their board certification. Now, private organizations can do whatever they want. And we have no problem with ABMS having whatever certification program they like. The case is about how ABMS has figured out a way to get hospitals to require maintenance of certification in order for physicians to be on staff at hospitals. And ABMS has figured out a way to get insurance plans to require maintenance of certification in order for physicians to be in insurance plans. So I give a specific example in the complaint of a doctor identified as by the initials JE, been in practice for decades, has a huge number of patients. He's treating COVID patients now. He has been excluded from the medical staff of his hospital because he has not maintained his certification with this private organization. And now we've gotten to the point where 80% of hospitals are requiring maintenance of certification by this private entity, ABMS. So the problem with this is there's no accountability for it. There's no legal recourse. It's not connected with state medical boards. There's no political oversight. It's what it is. It's a restraint of trade by ABMS that is interfering with physicians' ability to practice medicine, with their ability to see patients, for patients to access their doctors. So if one of JE's patients gets COVID, as I'm sure many have now, they go to the hospital, they ask to be seen by Dr. JE, and he can't see them. And it's not because there's anything wrong with his licensure, his credentials, his head board certification. It's because he did not do this annual maintenance of certification with this private entity. So it's because of this restraint of trade, which we're seeing in all fields now. I mean, we see it, you know, big tech, there are complaints about its restraint of trade. Other areas, there are complaints about restraint of trade. And I'm not asking this court to rule that there was a restraint of trade. Our complaint was dismissed with prejudice, without any discovery, based on an opinion of the judge that it was implausible that there would be a restraint of trade like this. 28 times in the decision, the trial judge uses the word plausible or plausibly or implausible, some variation at 28 times without allowing any discovery. Isn't that the legal standard that she's supposed to employ, Mr. Schlafly? Yes, please. Isn't that the legal standard she's supposed to employ, the plausibility for the pleading? The judge should not be prior to discovery using her own view of plausibility. And I cite some case law in my briefing that that plausibility standard is not supposed to be a factual determination by a trial judge. There's nothing like maintenance of certification in the legal profession. As attorneys, we wouldn't allow it. There's nothing like it. There's no way the judge has any experience with maintenance of certification. She has no basis for determining whether it's plausible or not. It is plausible that an entity that's trying to maximize its revenue would engage in restraint of trade to get more money. It is plausible. Mr. Schlafly, let me ask you a similar question or offer a similar observation and put it this way. I don't know whether as an intuitive matter it's plausible or not. I don't know. But what I do have in front of me is the complaint that you filed. Okay? And what paragraph or paragraphs in the complaint do you believe we should look at to show whether with respect to JE, another physician, or any other health care provider, that this arrangement or these arrangements that you express a lot of concern about, the board Okay, I know that you allege that they are. But what paragraph or paragraphs supply the facts that would satisfy the Twombly plausibility inference that Judge Brennan's pointing to? Yes, Your Honor. Thank you. That's an excellent question. So my section on ABMS conspiring with hospitals, which is the biggest problem here, starts with paragraph 25 here, page 7 of the complaint. Paragraph 25 states inclusion, but then I go into detail. So paragraph 26 then states that the American Hospital Association, which is a trade association representing nearly all hospitals in the United States, is actually a member of ABMS. So we have a membership by the trade association with ABMS. And then I give a specific example, starting in paragraph 27, that ABMS has a portfolio program, which it's apparently trademarked, which is a campaign by ABMS to induce hospitals, I'm reading from the complaint now, to impose the ABMS MOC product as a condition of holding medical staff privileges. And I footnote to internet reference that has this, and of course, not going to put all the details on the internet, obviously, but this they have. And then I go into paragraph 28, I'm quoting again, specifically, defendant ABMS requires of hospitals as a condition of joining its portfolio program, that the hospital agree and represent that it has, quote, a willingness to commit necessary resources and consider MOC a requirement for medical staff privileges for eligible physicians. And then it goes on, and you can read it further there, where if the hospitals do not commit to this, then they are unlikely to be approved for participation in this program. Now, ABMS is not going to post its specific agreements and the money that's going back and forth on the internet. I should not have to be able to quote that, the money that's changing hands here in my complaint, but I do quote one example, where they have a program, where they say hospitals, you have to agree that you're going to impose, consider to impose MOC as a condition of medical staff privileges. Now, what business is that of ABMS? That should be an independent hospital decision. We have no quarrel with hospitals that make independent credentialing decisions, no quarrel with that at all. But for a private entity that's maximizing its revenue to get into this and induce hospitals to require their proprietary product, which is widely criticized, and I quote that in my complaint too, it's not like this is something where a doctor has to show basic skills to maintain his certification. It's widely criticized that these multiple choice exams are irrelevant to medical practice, that they're enormously burdensome. They take doctors' time away from their patients, away from their families. I quote a professor at Washington University. I quote someone who actually was written up in the Journal of American Medical Association with his harsh complaint of this. State legislatures in a few states have started to ban this practice. Texas, Oklahoma, I don't have in the complaint, but Michigan has a ban with respect to insurance plans. Thank you, Mr. Schlafly. Yes. Your time has expired. Thank you. We'll move now to the APALE. Mr. Bierig. Good morning, Your Honor. It's Jack Bierig for APALE American Board of Medical Specialties. May it please the court. The maintenance of certification program at issue in this case is a voluntary program by which physicians who have been certified by an ABMS member board are able to demonstrate that they merit continuing certification. The program was adopted in the early 1990s in response to public criticism that a physician who was certified shortly after completing a residency program should not just be assumed to have maintained his or her skills and to have kept current on relevant medical developments for that physician's entire career. So ABMS required each member board to put in place a program whereby physicians certified by that board can demonstrate their entitlement to continuing certification. The details of the program vary from member board to member board, but there are three salient features. One, the program is entirely voluntary. Physicians who choose not to participate in MOC are free to practice medicine. Two, the program involves a career-long process designed to enhance a physician's medical knowledge, judgment, clinical technique, and professionalism. And three, the program provides information that hospitals, patients, payers, and others can use in making independent medical judgments about credentialing and about selection of physicians. Mr. Beery, can I ask you the same question? It really sounds to me like we're trying to have a debate about whether this is a good or bad policy, whether board certification should remain, whether it's an idea that's And I got to tell you, I just don't think that, at least for my part, I don't think that's our responsibility here. So the way I want to analyze the case, or the way I tend to think we should, is by focusing on what's alleged in the complaint, not how the program works or whether it's a good idea or not. And so maybe you could respond to your adversary's points about paragraphs 25 through 31, and why you think there's a pleading deficiency there. Okay, well first, on the debate as to whether it's a good or a bad program, Congress has settled that debate because Congress has twice incentivized physicians to participate. Perhaps, but I don't think it's for the court to figure out whether to maintain the program or not. No, that is correct. The question is whether it violates the antitrust laws. Right, so isn't that a matter of pleading at the 12B6 stage? Yes, it's a matter of pleading, but they have not alleged any specific fact to support either that there is a restraint. You know, Judge Easterbrook, in the Shacart case, said that there can be no restraint of trade without a restraint. They have not alleged a single fact to indicate that any physician has been subject to a restraint. They have not alleged a specific fact to show any kind of conspiracy, as Judge Packle ruled. The fact, assuming that, you know, taking their allegations that we try to demonstrate to hospitals and other decision makers that they should adopt maintenance of certification because we believe it to be in the interest of patients, that doesn't prove a conspiracy. That's just the normal marketplace at work. That's a provider of a program who thinks it's in the interest of patients telling decision makers why they think it's in the interest of patients. They haven't alleged a single fact to show some kind of unlawful agreement. They haven't alleged a single fact to show some kind of restraint. They also haven't alleged a single fact to show any kind of suppression of competition. You know, the Supreme Court, Your Honor, in Ryder v. Sonitone, said that the antitrust law, the Sherman Act, is designed to be a consumer welfare prescription. This maintenance of certification program is designed to fill that prescription to a T. It promotes competition by giving information to hospitals, to patients, to managed care programs about whether a particular physician has maintained his or her skills, is committed to a lifelong program of professionalism and continuing education. That promotes competition. That is the free market at work, giving information to hospitals and to other decision makers, to patients, to decide whether they want to credential someone. So Your Honor is absolutely right. We have to look at the allegations. But there is not a single specific allegation to indicate a restraint, to indicate a conspiracy, to indicate suppression of competition. The fact that this J.E., this one individual, has been told by his hospital that if he doesn't choose to participate in MOC, that doesn't indicate suppression of competition. There are many physicians out there still practicing. J.E. can still see the patient in his office or in another hospital that chooses to give him staff privileges. There is just no suppression of competition out there. There's not a single allegation that prices have been increased or that output has been reduced. What this amounts to, by the way, what this case amounts to is that the AAPS wants its physicians to be certified for their lifetime without any demonstration that they are entitled to continuing certification. That is not in the public interest, and the allegations here do not in any way demonstrate a violation of the antitrust law. What Mr. Schlafly says is what every plaintiff says who can't make out a cause of action. Let me have discovery to see if somehow that ABMS has made some kind of statement that violates the Illinois law or that somehow indicates a conspiracy. But the Supreme Court has taught us in Twombly and Iqbal and the Seventh Circuit in the BCB anesthesia case has made it clear that those kinds of, you know, let me see what I can come up with in discovery is not enough to send a case to discovery. They have to have alleged specific facts indicating a restraint, a conspiracy, and a suppression of competition and by the way, an injury to the plaintiff, which they have also not or an antitrust injury to plaintiffs, which they have also not alleged. So I think you're absolutely correct. We do have to look at the pleading. We have looked at the pleading and two judges, Judge Wood first and then Judge Packold have looked at the pleadings and they have found that there is not a single factual allegation to support sending this case to discovery. Your honors must know that these antitrust cases are extremely expensive to defendants and the Supreme Court has therefore made it very clear that before you send defendants into a very expensive, burdensome, plenary antitrust case, there has to be some kind of factual allegation and for the reasons I have stated here, there is none. What these guys want, what AAPS wants, is to be certified in essence for life and Congress has basically said, no, that's not a good idea. That's why Congress has twice, both in the Affordable Care Act and in MACRA, said we want to encourage physicians to participate in maintenance of certification, which should tell you two things. One, that Congress thinks that the program is a good thing and second, as we've said, it's entirely voluntary. Congress would not have incentivized and not have given financial incentive to physicians to participate in MOC if this thing were mandatory. It's voluntary. Physicians like J.E. can decide whether or not they want to participate. But as I've said, your honor, there is not a single allegation of a restraint, of suppression of competition or of any other thing that I can think of that would violate the antitrust laws. So as your honor knows, this exact question, the maintenance of certification program, has been before the third circuit in the Kenny case. The third circuit found that there was no unlawful tie, which of course there isn't here because there's a single, there's a single product, namely certification. Wasn't that time claim plead a little bit differently though, Mr. Barrett? I don't think it was pleaded differently, Judge. They were, you know, they're saying here that there is a tie between initial certification, which they want, and continuing certification, which they don't want. And that is a single product. And one of the things, as the court indicated, this court indicated in the Reifert case, what makes a tying arrangement unlawful is that it suppresses competition in the market for the tied product. Here, the tied product is allegedly the continuing certification. But there's only one entity that can grant continuing certification. It's the one that granted the certification in the first instance. Their theory, by the way, that there's a tie between this certification and staff privilege is ridiculous because whether staff privileges are granted is not decided in any way by the ABMS. It's decided by the hospital acting independently on its best judgment as to whether the physician warrants staff privileges. So their theory that there's a tie between maintenance of certification and staff privilege just is completely at odds with any notion of a tying arrangement, which requires a tie imposed by the seller of two separate products. So I think at the end of the day, Your Honor, they're pretty much the same. Thank you, Mr. Bierig. Mr. Schlafly, your time has expired, but we'll give you another minute. Thank you. I'll be very brief. If discovery is an issue, the trial judge can limit discovery. We're not interested in expansive discovery here. We're not really interested in damages. We're interested in injunctive relief. And we've got now in 2021 some very sophisticated players out there who are restraining trade. And they're not going to post it on the internet how they're doing it. A plaintiff should not be expected to plead these specific agreements that are going on in these sophisticated restraints of trade. And as to the tying issue, it's the hospitals that are being induced by ABMS to require ABMS maintenance of certification as a condition of licensure. And that's slightly different from a textbook tying arrangement. But there's no loophole in tying. The Sherman Act does not say if you're sophisticated and clever, you can get around the tying prohibition and restraint of trade. And so here in this, just to conclude, in this day and era, we've got sophisticated players who are doing restraint of trade. And a pleading should not be dismissed based on notions of plausibility when limited discovery could get to the facts and could argue about the facts. Thank you, Your Honor. Thank you, Mr. Schlafly. Thank you.